UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **OMAR SAQR** <br> c/o Godbey Law LLC <br> 708 Walnut St., Suite 600 <br> Cincinnati, Ohio 40208 <br><br> Plaintiff <br> -vs- <br><br> **DR. ANDREW FILAK JR.** <br> *In his official Capacity* <br> 2600 Clifton Avenue <br> Cincinnati, Ohio 45220 <br><br> and, <br><br> **DR. LAURA MALOSH** <br> *In her official Capacity* <br> 2600 Clifton Avenue <br> Cincinnati, Ohio 45220 <br><br> and, <br><br> **DR. AURORA BENNETT** <br> *In her official Capacity* <br> 2600 Clifton Avenue <br> Cincinnati, Ohio 45220 <br><br> and, <br><br> **DR. ROBERT BRACKENBURY** <br> *In his official Capacity* <br> 2600 Clifton Avenue <br> Cincinnati, Ohio 45220 <br><br> and, <br><br> **DR. SARAH RIDDLE** <br> *In her official Capacity* <br> 2600 Clifton Avenue <br> Cincinnati, Ohio 45220 <br><br> and, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **Case No.: 1:20-cv-32** <br><br> **Judge:** |

1

| | |
|---|---|
| **DR. ROBERT ELLIS** | : |
| *In his official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| and, | : |
| | : |
| **DR. AMY GUIOT** | : |
| *In her official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| and, | : |
| | : |
| **DR. MICHAEL LIEBERMAN** | : |
| *In his official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| and, | : |
| | : |
| **DR. JOHN LORENZ** | : |
| *In his official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| and, | : |
| | : |
| **DR. RICK RICER** | : |
| *In his official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| and, | : |
| | : |
| **DR. MITCHELL RASHKIN** | : |
| *In his official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| and, | : |
| | : |
| **DR. MEGAN RICH** | : |
| *In her official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |

| | |
|---|---|
| and, | : |
| | : |
| **DR. ALVIN CRAWFORD** | : |
| *In his official Capacity* | : |
| 2600 Clifton Avenue | : |
| Cincinnati, Ohio 45220 | : |
| | : |
| Defendants. | : |

## COMPLAINT FOR INJUNCTIVE RELIEF
## WITH JURY DEMAND

Plaintiff Omar Saqr ("Mr. Saqr") states the following for his Complaint against Andrew Filak Jr., Laura Malosh, Aurora Bennett, Robert Brackenbury, Sarah Riddle, Robert Ellis, Amy Guiot, Michael Lieberman, John Lorenz, Rick Ricer, Mitchell Rashkin, Megan Rich, and Alvin Crawford ("Defendants"):

### INTRODUCTION

1. This Action arose after agents and decisionmakers of the University of Cincinnati College of Medicine ("UC") dismissed Plaintiff Omar Saqr from its Medical School after not providing him reasonable accommodations for his disabilities. Specifically, Mr. Saqr alleges that agents and decisionmakers of UC violated his rights under federal law to be free from discrimination because of a disability while participating in a program offered by a public entity receiving federal financial assistance. UC fosters an environment that discriminates against students with disabilities. Specifically, UC and its agents do not take disabilities or accommodations for disabilities seriously. Through its administrators and agents, UC projects to its students and faculty that a mere diagnosis of a disability or a simple and reasonable request for accommodation predicts that the student will

3

fail as doctor. Because of this discriminatory stigma, UC's decisionmakers dismissed Mr. Saqr after exercising his rights under federal law to request reasonable accommodations.

2. Mr. Saqr seeks reinstatement into the Medical School, an injunction to prevent ongoing discrimination, and reasonable attorney's fees.

## PARTIES

3. Mr. Saqr attended UC's College of Medicine. Mr. Saqr has several disabilities including Major Depressive Disorder, Generalized Anxiety Disorder, and Attention Deficit Hyperactivity Disorder ("ADHD"). These disabilities affect Mr. Saqr's ability to learn in a manner consistent with average similarly-situated students. Mr. Saqr passed all coursework with reasonable accommodations.

4. All Defendants are agents of the University of Cincinnati and are sued in their official capacity. All Defendants by nature of their position have some connection to Mr. Saqr's alleged harm and have the power to execute any injunction that this Court may order. UC is a publicly-funded institution located in Cincinnati, Ohio.

5. Defendant Filak is the Dean of the University of Cincinnati College of Medicine. Defendant Filak is the final decisionmaker on whether a student is dismissed from the University of Cincinnati's College of Medicine. Defendant Filak oversees all staff and faculty of University of Cincinnati's College of Medicine. Defendant Filak has the duty to ensure every student of the College of Medicine receives reasonable accommodations. Defendant Filak must ensure no students are discriminated or retaliated against because of a qualified disability. Defendant Filak by nature of his office and position has the power to prevent any further discrimination, retaliation, or discriminatory animus towards Mr. Saqr because of his disability or

request for disability accommodations. If Mr. Saqr were reinstated into UC, Defendant Filak has the power, by nature of his office, to ensure he is granted proper reasonable accommodations. Defendant Filak has the power to reinstate Mr. Saqr to the College of Medicine.

6. Defendant Malosh is UC's Assistant Dean for academic support services. She serves as the liaison to the Office of Accessibility Resources and is the primary contact for students at UC College of Medicine for any questions or concerns related to disability accommodations. Defendant Malosh has input and decision-making authority to determine if a student is provided disability accommodations. Defendant Malosh has the duty to ensure students requests for reasonable disability accommodations are properly reviewed and granted. Defendant Malosh serves as a conduit between the Disability Accommodation Committee and the student. Defendant Malosh, by virtue of her office, must work with students to ensure they receive reasonable accommodations. If an injunction reinstates Mr. Saqr into UC, Defendant Malosh has the power to ensure Mr. Saqr would receive reasonable accommodations. She would also be able to ensure that any future requests for reasonable accommodations are reviewed and granted. Defendant Malosh also has the power to ensure any accommodations that are provided are executed and carried out by UC and its agents.

7. Defendant Aurora Bennett is UC's Associate Dean of Student Affairs. Defendant Bennett is in charge of exceptions and accommodations to the general procedures outlined in UC's student handbook.[1] Defendant Bennett's office is charged with the

---

[1] University of Cincinnati College of Medicine Handbook, attached as Exhibit A.

5

duty to ensure students succeed in the curriculum. Defendant Bennett is a member of UC's Disability Accommodation Committee that grants or denies a student's request for disability accommodations. Defendant Bennett is a chief decisionmaker of the College of Medicine. Defendant Bennett by the nature of her office can allow a student to withdraw from a course or take an incomplete for the course. By nature of her position, Defendant Bennett can ensure no student is discriminated against because of a disability. If Mr. Saqr is reinstated to UC, Defendant Bennett would have the ability to ensure any reasonable requests for disability accommodation are reviewed and granted.

8. Defendants Robert Brackenbury, Sarah Riddle, Robert Ellis, Amy Guiot, Michael Lieberman, John Lorenz, and Rick Ricer ("PAC Defendants") are members of the PAC committee that recommended Mr. Saqr for dismissal (*see Infra*). The PAC Defendants have the duty to review the performance of UC's students without using a disability or a request for disability accommodations as a negative factor. The PAC Defendants are the decision-making committee that decides whether to recommend a UC student for dismissal. The PAC Defendants have the power to ensure no student is dismissed because of a disability or request for disability accommodation. Upon information and belief, the PAC Defendants are still serving on the committee or can serve on the committee in the future. If reinstated, the PAC Defendants would have the power to prevent further disability discrimination and retaliation in their decision-making process. The PAC Defendants can also ensure UC's failure to provide accommodations is considered in any future PAC review process. The PAC Defendants have the power to reinstate Mr. Saqr to UC's medical program.

9. Defendants Mitchell Rashkin, Megan Rich, and Alvin Crawford ("Appeal Panel Defendants") are members of the appeal panel that reviewed and upheld the PAC's decision to recommend Mr. Saqr for dismissal (*see Infra*). The Appeal Panel Defendants have the duty to review the performance of UC's students without using a disability or a request for disability accommodations as a negative factor. Appeal Panel Defendants are the final decision-making committee that decides whether to recommend a UC student for dismissal. The Appeal Panel Defendants have the power to ensure no student is dismissed because of a disability or request for disability accommodation. Upon information and belief, the Appeal Panel Defendants are still serving on the committee or can serve on the committee in the future. The Appeal Panel Defendants agreed to serve on the appeal board for three years. If reinstated, the Appeal Panel Defendants would have the power to prevent further disability discrimination and retaliation in their decision-making process. The Appeal Panel Defendants can also ensure UC's failure to provide Mr. Saqr accommodations is considered in any future appeal process. The Appeal Panel Defendants have the power to reinstate Mr. Saqr into UC's medical school.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

11. Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391 because all or a substantial amount of the events giving rise to Plaintiff's claims occurred within this District.

**STATEMENT OF FACTS**

12. Mr. Saqr enrolled in the University of Cincinnati's College of Medicine in approximately August of 2015.

13. Mr. Saqr enrolled in a four-year program seeking a Doctor of Medicine degree.

14. Mr. Saqr struggled with examinations from the outset of his enrollment in the UC.

15. However, he performed well in his clinicals and non-written assessments.

16. In his first year of medical school, Mr. Saqr did not pass two courses. First, he didn't pass Fundamentals of Molecular Medicine. Then, he didn't pass Fundamentals of Cellular Medicine.

17. Mr. Saqr narrowly did not pass both classes.

18. For each graduating class of students, UC establishes a Performance and Advancement Committee ("PAC") for that particular class of students to monitor the progress of each student through the entire four-year curriculum.[2]

19. If a student is assigned or transferred to a new graduating class, he or she is assigned a new PAC.

20. The PAC consist of seven faculty members appointed by the Senior Associate Dean for Academic Affairs or his/her designee.

21. Each member of the PAC has one vote.

22. For the PAC to make a decision, a simple majority of voting members is required.

23. Decisions of the PAC are based on the student's academic record, behavior, professionalism, and overall performance.

---

[2] Id.

24. Students can speak with the PAC to furnish supplemental information before a decision is made.
25. The PAC regularly reviews each student's performance and may make decisions on dismissals and leaves of absences.
26. UC automatically dismisses a student from the College of Medicine if the student fails any course in his or her first year of enrollment.
27. However, if a UC student receives a failing grade in their first year, the PAC may allow the student to continue enrollment into the next school year and allow the student to remediate the failed course during the summer, at its discretion.
28. The PAC can also allow a student who failed a course during his or her first year to retake his or her entire first year of coursework.
29. UC places a student on a mandatory leave of absence if he or she fails two or more classes during his or her first year of enrollment.
30. After the leave of absence, the PAC decides whether to allow the student to retake the first-year curriculum.
31. Because Mr. Saqr narrowly failed two classes during his first year of curriculum, he was forced to take a mandatory leave of absence.
32. After the leave of absence, Mr. Saqr applied for, and the PAC granted readmission.
33. The PAC allowed Mr. Saqr to retake his first-year curriculum starting in August of 2016.
34. Upon readmission, Mr. Saqr performed below average in his written examinations and assessments. However, he passed all courses and performed above average in all non-written examinations and clinicals.
35. Mr. Saqr started his second year of curriculum in late August 2017.

36. Prior to starting his second-year, Mr. Saqr had difficulty focusing and struggled with anxiety and depression.

37. Only a month after the semester had begun, Mr. Saqr decided to get tested for learning disabilities in September of 2017.

38. Doctors diagnosed Mr. Saqr with ADHD in September of 2017.

39. Immediately after doctors diagnosed Mr. Saqr with ADHD, he requested accommodations from UC.

40. To request accommodations, students must provide UC with documentation that verifies a functional impairment to one or more major life activities.

41. A request for academic accommodations must be made in writing and submitted to the Assistant Dean for Academic Support and Counseling.

42. The UC Disability and Accommodations Committee reviews requests for accommodations.

43. The Disability and Accommodations Committee is composed of the Senior Associate Dean for Academic Affairs, Associate Dean for Student Affairs and Admissions, and the Assistant Dean for Academic Support and Counseling.

44. Because of the new diagnosis, Mr. Saqr needed time to adjust to his medication and to implement the new study strategies and techniques his doctors provided him.

45. Immediately after his diagnosis, Mr. Saqr requested accommodations.

46. UC provided Mr. Saqr with extended testing time and a quite testing room.

47. On October 15, 2017, Mr. Saqr emailed Laura Malosh, DJ Lowrie, and Aurora Bennett requesting leave to receive an incomplete in this Blood and Cardiovascular

class until he can fully understand and address his disability, maximize his treatment, and fully adjust his medicine.

48. Mr. Saqr's grades had increased above the passing threshold after he began medicine and treatment for the ADHD.

49. He just needed more time.

50. Defendant Malosh, improperly, instructed Omar to take this disability accommodation request to the PAC instead of reporting the disability accommodation request to the Disability and Accommodations Committee she was a member of.

51. Defendant Malosh told Mr. Saqr to study harder but failed to provide him any guidance with his learning disability.

52. Defendant Malosh informed Mr. Saqr that not everyone belongs in medical school when he was asking for assistance.

53. This attitude and the culture of UC thwarted Mr. Saqr's future attempts to request disability accommodations because it had a chilling effect on requesting disability accommodations.

54. Mr. Saqr still met with the PAC to request additional accommodations.

55. Specifically, Mr. Saqr requested additional time to deal with his medication and new study techniques before the PAC made a decision on dismissal.

56. The PAC ignored a note from Mr. Saqr's doctor that suggested he needed additional time to adjust to his medicine.

57. The PAC refused to acknowledge Mr. Saqr's learning disability, provide him any accommodations, or additional time to adjust his medicine.

58. In fact, a UC faculty member told Mr. Saqr the PAC had to decide if he could even succeed in medical school and as a doctor if all his disabilities were addressed.
59. Mr. Saqr then did not pass a third class because he did not receive an accommodations and the PAC recommended him for dismissal.
60. Mr. Saqr would not have been dismissed if the PAC Defendants, Defendant Malosh or Defendant Bennett granted his request for accommodations.
61. A UC student may appeal a decision by his or her PAC.
62. To appeal, the student must submit a written request for an appeal of a decision for dismissal to the Senior Associate Dean for Academic Affairs within five business days of his or her receipt of the PAC's written decision of dismissal.
63. In the written appeal, UC students can submit new evidence not previously considered by his or her PAC.
64. Mr. Saqr asked Defendant Malosh what he needed to do for the written appeal and what a successful appeal looked like, and she could not provide answers.
65. Instead, Defendant Malosh suggested the appeal process was a sham that rarely evaluates new evidence.
66. The Senior Associate Dean for Academic Affairs creates an Academic Appeal Board composed of ten members of the UC faculty.
67. The Appeal Board consist of no members of the PAC.
68. The faculty on the Appeal Board are appointed for three-years.
69. Each student's appeal is heard by a panel of three members of the Academic Appeal Board.
70. The three-member appeal panel's goal is to determine if the PAC's decision to dismiss a student was reasonable.

71. The appeal panel reviews the entire student's file and the PAC actions.

72. After the appeal panel decides, the UC Dean renders a final decision.

73. The Dean has the option to overturn the appeal panel and the PAC.

74. The Dean is the final decisionmaker.

75. The Dean can reinstate the student.

76. Mr. Saqr timely filed a written appeal of the PAC's decision of dismissal.

77. Mr. Saqr's Appeal Panel consisted of Defendants Mitchell Rashkin, Megan Rich, and Alvin Crawford.

78. Mr. Saqr informed the Appeal Panel the PAC did not adequately consider his newly diagnosed learning disability, and the PAC used his learning disability as a negative factor which ultimately lead to the recommendation for dismissal.

79. Mr. Saqr requested accommodations to the Appeal Panel.

80. More specifically, Mr. Saqr requested additional time to adjust to his medication and new study techniques before a dismissal decision was made and that his disability be used as a positive factor.

81. Mr. Saqr told the Appeal Panel that he could pass with accommodations, he just needed more time.

82. The Appeal Panel ignored Mr. Saqr's request to have additional time to adjust to his new medication and disability and ignored his new evidence of improved grades with accommodations.

83. Thus, both the PAC and the Appeal Panel ignored Mr. Saqr's improved performance and ability to pass curriculum with reasonable accommodations, his disability, and his request for accommodations and recommended him for dismissal.

84. The Appeal Panel sent its decision to dismiss Mr. Saqr to the Dean, and the Dean chose to not overrule the PAC or Appeal Panel.
85. The Dean sent Mr. Saqr a letter on January 12, 2018 upholding the appeal panel's recommendation for dismissal.
86. The Dean knew or should have known about Mr. Saqr's disability and the failure of UC to allow him reasonable accommodations and need for more time to adjust to his medication.
87. As a result of the January 12, 2018 letter, Mr. Saqr was permanently dismissed from UC.
88. Defendants actions in dismissing Mr. Saqr from UC, failing to provide him reasonable accommodations, and refusing to readmit him were committed intentionally, knowingly, and with a conscious disregard for the rights of Mr. Saqr under Title II of the ADA.
89. In the 2016, 2017, and 2018 school year, every UC College of Medicine student who was dismissed suffered from a protected disability.
90. As a direct and proximate result of Defendants, Mr. Saqr was denied rights under federal law and denied the opportunity to continue his medical education.
91. Mr. Saqr could have passed tests and assessments with reasonable accommodations.

## **STATEMENT OF CLAIMS**

### **Count I**
### **(Discrimination and Retaliation**
### **Under Title II of The Americans with Disabilities Act)**

92. Mr. Saqr restates and incorporates all paragraphs.

93. Mr. Saqr suffers from several disabilities.

94. More specifically, Mr. Saqr has ADHD.

95. Mr. Saqr's ADHD causes him to learn differently than similarly-situated non-disabled students.

96. However, with accommodations for ADHD, Mr. Saqr passed all assessments.

97. After UC provided Mr. Saqr with some accommodations, he performed above the passing threshold and passed all assessments.

98. Mr. Saqr held himself out in a manner of upmost professionalism and was otherwise qualified for UC's Medical Program.

99. UC and its agents foster an environment that discriminates against students with learning disabilities.

100. In fact, one of UC's agents told Mr. Saqr the Appeal Panel, the PAC, and faculty of UC do not take learning disabilities seriously because they believed students would not succeed as doctors because of their disabilities.

101. During the PAC and Appeal process, Mr. Saqr was faced with opposition and judgment for requesting disability accommodations.

102. In fact, during the Appeal Process one of UC's agents told Mr. Saqr they had to decide if he could pass courses with a disability.

103. Thus, the PAC Defendants and Appeal Defendants used Mr. Saqr's disability as a negative factor when deciding to dismiss him.

15

104. UC and its agents have a pattern of dismissing students with disabilities.

105. Indeed, 100% of the students dismissed from UC's medical program in 2016, 2017, and 2018 had disabilities.

106. Even with these numbers, the Dean and Defendant Bennett continued to appointment members to the PAC and Appeal Board that were discriminating against students because of disabilities.

107. Mr. Saqr was told by an upperclassmen not to request accommodations because it would upset the PAC and Appeal Panel.

108. Within three months of being diagnosed with ADHD, the PAC Defendants, the Appeal Panel Defendants, and the Dean recommended Mr. Saqr for dismissal.

109. The PAC Defendants, the Appeal Panel Defendants, the Dean, Defendant Malosh, and Defendant Bennett ignored Mr. Saqr's newly diagnosed learning disability and failed to provide him accommodations.

110. Defendant Malosh even provided Mr. Saqr false information on where to submit a request for accommodations which thwarted his attempt to get proper accommodations.

111. More specifically, Dr. Malosh told Mr. Saqr to request accommodations from the PAC and not the Disability Accommodation Committee.

112. Defendant Malosh constantly demonstrated an attitude and demeanor that students with disabilities were a hassle and did not belong in medical school.

113. This attitude and the culture of UC chilled Mr. Saqr's future request for accommodations.

114. As an accommodation request, Mr. Saqr requested an incomplete for a course to allow him time to adjust to his medicine.

16

115. Students without disabilities routinely are allowed to take an incomplete for courses.

116. Mr. Saqr was not allowed to take the incomplete as a disability accommodation.

117. The PAC Defendants, the Appeal Defendants, and the Dean did not take into consideration that Mr. Saqr had just been diagnosed with a disability when they dismissed him from UC.

118. The PAC Defendants, the Appeal Defendants, and the Dean should have allowed Mr. Saqr the opportunity to continue in the medical school with reasonable accommodations before dismissing him.

119. Mr. Saqr only failed medical school because of his disability.

120. Defendants acted willfully and in a conscious disregard of the rights of Mr. Saqr.

121. Mr. Saqr suffered damages because of Defendant's actions.

### Count II
**(Failure to Accommodate Under Title II of The Americans with Disabilities Act)**

122. Mr. Saqr restates and incorporates all paragraphs.

123. Doctors diagnosed Mr. Saqr with ADHD early in his second year of curriculum.

124. Shortly after his diagnosis and after taking medication and using new study tactics, Mr. Saqr noticed his grades on assessments improved above the passing threshold.

125. However, Mr. Saqr needed additional time to adjust to his newly prescribed medicine and study techniques.

126. Mr. Saqr requested disability accommodations to Defendant Malosh, and she misdirected him to the PAC to request disability accommodations.

127. This misdirection caused Mr. Saqr's request for accommodation to be delayed.

128. In addition, Mr. Saqr requested to the PAC Defendants and Defendant Bennett that he be allowed to take an incomplete in one of his courses to allow him time to adjust to his medication.

129. The PAC Defendants and Defendant Bennett had the power to grant this accommodation.

130. This accommodation was reasonable.

131. Mr. Saqr had just learned of his disability, and UC routinely allows students to take an incomplete for a course.

132. Mr. Saqr also requested from the PAC Defendants, the Appeal Panel Defendants, and Defendant Malosh that he be allowed additional time to adjust to his medication and allowed to implement new study techniques before a decision of dismissal was made.

133. Mr. Saqr's requests for accommodations were denied.

134. Mr. Saqr's requests for accommodation did not present an undue burden for UC.

135. Mr. Saqr's doctor provided a note to the PAC Defendants suggesting that Mr. Saqr needed additional time to adjust to his medication.

136. Defendants ignored this note.

137. The PAC Defendants and Defendant Bennett denied this request for disability accommodations.

138. If the PAC Defendants granted Mr. Saqr's request for accommodations, he would not have failed.

139. The Appeal Defendants and the Dean knew about Mr. Saqr's disability and the failure of UC to provide reasonable accommodations, and still recommended Mr. Saqr for dismissal.

140. Mr. Saqr showed that with minimal accommodations his grades improved.

141. Mr. Saqr could have passed all coursework with reasonable accommodations.

142. The class that Mr. Saqr requested an incomplete in was the class that caused him to fall below the passing threshold.

143. Defendants acted willfully and in a conscious disregard of the rights of Mr. Saqr.

144. Mr. Saqr suffered damages because of Defendant's actions.

**Wherefore,** Plaintiff Omar Saqr respectfully requests that this Court issue judgment in his favor on all Counts and award him the following relief:

   a. Reinstatement;

   b. Injunction of unlawful conduct;

   c. Statutory damages;

   d. Attorney Fees;

   e. Any and all other relief available in law or equity.

Respectfully Submitted,

*/s/ Robert L. Thompson*
**Robert L. Thompson (0098126)**
GODBEY LAW LLC
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
PH: 513/241-6650 – FX: 513/241-6649
*Robert@GodbeyLaw.com*

-and-

**Brian P. Gillan (0030013)**
7571 Indian Hill Rd.,
Cincinnati, Ohio 45243
bgillan1957@yahoo.com

*Co-Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demand a trial by jury on all matters so triable.

*/s/ Robert L. Thompson*

20