**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**OMAR SAQR,**

    **Plaintiff,**

    v.

**ANDREW FILAK, JR., et al.,**

    **Defendants.**

Case No. 1:20-cv-32
JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss (Doc. 16) Omar Saqr's Complaint (Doc. 1). For the reasons that follow, the Court **GRANTS** the Motion (Doc. 16) and **DISMISSES** the claims in Saqr's Complaint (Doc. 1) **WITHOUT PREJUDICE** to re-filing in state court, except for Saqr's ADA retaliation claim, which the Court **DISMISSES WITH PREJUDICE**.

**BACKGROUND**

This case arises out of Omar Saqr's dismissal from the University of Cincinnati ("UC") College of Medicine, which he alleges violated the Americans with Disabilities Act ("ADA"). (Compl., Doc. 1, ¶ 1, #3). The present suit is not Saqr's first attempt to press such claims. As explained more fully below, Saqr previously filed a lawsuit in this Court along with his brother, Ahmad, alleging the same claims along with various others that he has not raised in the instant suit. *See Saqr v. Univ. of Cincinnati ("Saqr I")*, No. 1:18-cv-542, 2020 WL 5361669, at *1 (S.D. Ohio Sept. 8,

2020).[1] At this time, all of Omar Saqr's claims have been dismissed from the earlier action. *See id.* at *10. The Court has already summarized much of the applicable general background in its September 8, 2020, Opinion and Order in Saqr's earlier lawsuit. *See generally Saqr I*, 2020 WL 5361669. The discussion that follows here is abbreviated and modified from the Court's previous account. Nevertheless, the Court must still review in some detail the course of Omar Saqr's participation in that earlier litigation.

Omar Saqr, an Egyptian Muslim who suffers from anxiety and Attention Deficit Hyperactivity Disorder, enrolled at UC's College of Medicine. (Compl., Doc. 1, ¶ 3, #4). He performed poorly there, which he attributes to his disabilities. (*Id.* at #8–10). UC's Performance and Advancement Committee recommended that UC dismiss Saqr from the College of Medicine. (*Id.* at ¶ 59, #12). Saqr appealed that recommendation, but UC denied his appeal and dismissed him. (*Id.* at ¶ 84, #14).

Omar Saqr (together with his brother, Ahmad, who was also dismissed from UC's College of Medicine) filed his first lawsuit arising out of these events on August 3, 2018. In that suit, he alleged that UC breached a contract (the school's handbook), as well as discriminated and retaliated against him in violation of Titles II and V of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, Title VI of the Civil Rights Act, and corresponding Ohio law, by failing to remedy the school's

---

[1] The Court may and does take judicial notice of the docket in Saqr's earlier suit. *See Buck v. Thomas M. Cooley Law Sch.*, 587 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

pattern and practice of discriminating against students based on (1) their disabilities and (2) their national origins. *Saqr I*, 2020 WL 5361669, at *1.

On February 20, 2019, the Magistrate Judge to whom the matter was assigned issued a First R&R in *Saqr I*. In that First R&R, the Magistrate Judge addressed UC's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. *Id.* at *2. More specifically, the Magistrate Judge recommended that this Court dismiss several of the Saqrs' claims. As relevant here, as to the Saqrs' discrimination claim arising under Title II of the ADA, the Magistrate Judge found that, although the Saqrs had adequately pled the claim, the Eleventh Amendment barred a federal court from hearing the specific Title II claim that the Saqrs were advancing, which was predicated on allegedly wrongful denial of access to a professional school. *Id.* Because the Eleventh Amendment applied, the Magistrate Judge further concluded that the Saqrs could not seek money damages from UC in connection with that claim. *Id.* Accordingly, she recommended dismissal of the Title II discrimination claim to the extent it sought damages, but concluded that the Saqrs' Title II claim seeking injunctive relief should survive UC's Motion, under the *Ex parte Young* exception to sovereign immunity. *Id.* The Magistrate Judge also recommended dismissing the ADA retaliation claims on grounds of both sovereign immunity and failure to adequately plead supporting facts. *Id.*

None of the parties objected to this First R&R in *Saqr I*. Thus, roughly a month later, on March 14, 2019, this Court (i.e., Judge Dlott, before whom the case was pending at the time) issued an Order adopting the First R&R in full, and thus

3

dismissing the Saqrs' ADA retaliation claims in their entirety and their other ADA claims to the extent that those claims sought money damages. *Id.* at *3.

A month after the Court's Order, on April 15, 2019, UC filed a Motion for Judgment on the Pleadings, which requested that the Court dismiss the Saqrs' then-remaining discrimination claims arising under Title II of the ADA, through which the Saqrs sought declaratory and injunctive relief. *Id.* In that Motion, UC argued that Eleventh Amendment immunity barred the Saqrs' discrimination claims even to the extent that they sought only prospective relief, as the Saqrs failed to include in their Complaint allegations against, or requests for prospective relief from, any identified state official, which is a requirement a party must meet to fall within the *Ex parte Young* exception to sovereign immunity.

On September 6, 2019, the Saqrs filed a Motion to Amend the Complaint, to which they attached a Proposed Amended Complaint. *Id.* In their Proposed Amended Complaint, the Saqrs added two UC officials as Defendants—Andrew Filak, Jr. and Laura Malosh. The Saqrs described the two in the Proposed Amended Complaint simply as "agents and decision makers [sic] of UC's medical school." *Id.*

On September 23, 2019, the Magistrate Judge issued the Second R&R in *Saqr I*. The Magistrate Judge determined that, notwithstanding her previous R&R, sovereign immunity bars all claims that are asserted directly against a state itself, including claims for prospective relief. However, the Magistrate Judge noted that, under *Ex parte Young*, that immunity does not extend to suits in federal court seeking prospective relief against individual officials who are acting on behalf of the state. *Id.*

4

Based on that observation, coupled with a review of the Saqrs' then-recently filed Proposed Amended Complaint, the Magistrate Judge noted in the Second R&R that it appeared the Saqrs had attempted to remedy the sovereign immunity problem as to their injunctive relief claims by adding two individuals affiliated with UC's College of Medicine as defendants—Filak and Malosh. *Id.* But, as the Saqrs' Proposed Amended Complaint merely mentions the two individuals' names and generically describes them as "agents and decision makers of UC's medical school," the Magistrate Judge further observed that "[i]t is not entirely clear [from the Proposed Amended Complaint] whether the newly proposed individual Defendants" might qualify as state officials acting on behalf of Ohio, and therefore trigger the exception to the sovereign immunity doctrine that would otherwise bar the Saqrs' Title II claims. *Id.*

Accordingly, in the Second R&R in *Saqr I*, the Magistrate Judge recommended that this Court grant UC's Motion for Judgment on the Pleadings, but dismiss *without* prejudice the Saqrs' ADA Title II claims, to see whether they could plead a viable claim by reference to particular state officials. *Id.* at \*4. On the same day that she issued the Second R&R, September 23, 2019, the Magistrate Judge also issued an Order that imposed a deadline of September 30, 2019, by which the Saqrs could choose either (1) to rest on their September 6, 2019 Motion to Amend the Complaint, or (2) to file a new Motion to Amend with a different proposed amended complaint to account for the concerns that the Magistrate Judge had identified. *Id.*

5

Notably, none of the parties objected to the Magistrate Judge's Second R&R in *Saqr I*. And the Saqrs did not file a new Motion to Amend their Complaint by the deadline set forth in the September 23, 2019, Order, nor did they request more time to do so. *Id.* The Saqrs thus elected to rest on their then-pending Motion to Amend with the Proposed Amended Complaint that they attached to it.

In compliance with the schedule established by the September 23, 2019, Order, UC filed a memorandum in opposition to the Saqrs' Motion to Amend on October 4, 2019. *Id.* The Saqrs timely filed a reply brief on October 11, 2019. *Id.* But the reply added two new wrinkles: (1) the Saqrs provided details, for the first time, about Filak and Malosh's administrative positions at UC's College of Medicine, and (2) they attached to their brief an "Amended Proposed Amended Complaint." Consequently, UC filed a Motion for Leave to File a Surreply or, in the Alternative, to Strike the Saqrs' "Amended Proposed Amended Complaint." *Id.* The Magistrate Judge issued a notation order on October 18, 2019, which granted UC's Motion for Leave to File a Surreply. *Id.*

Less than two months later, on December 2, 2019, the Magistrate Judge issued her Third R&R in *Saqr I*, which recommended that this Court: (1) disregard the Saqrs' allegations in their Reply and its attached Amended Proposed Amended Complaint, and (2) deny the Saqrs leave to file their Proposed Amended Complaint on futility grounds. *Id.* As for the Saqrs' discrimination claims arising under Title II of the ADA that were seeking prospective relief, the Magistrate Judge concluded in the Third R&R that the doctrine of sovereign immunity bars those claims because,

6

while the Saqrs named two state officials as defendants, they did not establish that these state officials had any connection with an allegedly unlawful act against the Saqrs. That type of "connection," the Magistrate Judge held, is required for the *Ex parte Young* exception to sovereign immunity to apply. *Id.* Finally, the Magistrate Judge recommended that, even if the claims in the Proposed Amended Complaint were not futile, this Court should still deny the Saqrs' Motion to Amend, as allowing their requested amendment would cause undue delay, given that the Saqrs filed that Motion more than a year after they had filed their original Complaint, nearly six months after they had informed the Court that they did not anticipate adding parties or claims, and "long after UC had engaged in extensive paper discovery and had deposed both [the Saqrs]." *Id.*

On December 11, 2019, this case was transferred to the undersigned judge. On December 16, 2019, the Saqrs filed an Objection, which opposed the entire Third R&R and argued that: (1) the Proposed Amended Complaint was not futile; (2) the amendment would not unduly delay the earlier action or prejudice UC; and (3) the Court should consider the Amended Proposed Amended Complaint, which also was not futile. *Id.* at *5. UC then filed a response. *Id.*

On January 10, 2020, before this Court had reached a decision regarding the Third R&R in *Saqr I*, Omar Saqr (but not his brother Ahmad) filed the instant action in the Southern District of Ohio alleging discrimination, retaliation, and failure to accommodate under Title II of the ADA only—claims he had already brought in *Saqr I*. (Compl., Doc. 1, #15–19). When he filed this new suit, however, he failed to identify

7

the earlier action as a "related case" on the Civil Cover Sheet. (Doc. 1-2). As a result, Omar's second lawsuit was assigned to another judge of this Court. About a month and a half later, on February 21, 2020, UC filed in the earlier action a Notice of Related Case (*Saqr I*, No. 1:18-cv-542, Doc. 44) that requested that the undersigned judge preside over both cases. A week later, on February 28, 2020, the Court granted UC's request, and so Omar's second action was transferred to the undersigned judge. (*Saqr I*, No. 1:18-cv-542, Doc. 46; *see also* Doc. 14). And roughly a month after that, on March 20, 2020, the Defendants in the instant case—all allegedly officials at UC's College of Medicine—moved to dismiss all of Omar's claims given that Omar already asserted the same claims for relief in the earlier action. (Doc. 16). That Motion to Dismiss became ripe for the Court's review on April 27, 2020. (Doc. 19). On September 8, 2020, this Court adopted in full the Magistrate Judge's Third R&R in *Saqr I*, thus dismissing all of Omar Saqr's claims from that action.

## LEGAL STANDARD

At the motion to dismiss stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [a plaintiff] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id*. (citations omitted).

In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is so, however, only as to factual allegations. The Court need not accept as true a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 546–47. In sum, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.*

## LAW AND ANALYSIS

The exact procedural posture of this case is unusual—the instant action is Omar Saqr's second lawsuit asserting the same claims, and Defendants moved to dismiss it after the Magistrate Judge in *Saqr I* issued her Third R&R recommending dismissal of all of Saqr's claims from that action, but before this Court adopted that Third R&R. The Court will discuss below the wrinkles this unusual timing creates. But the basic principle that determines the outcome is common sense: absent some special circumstance that does not obtain here, a litigant whose claims have already been (or are being) decided in one action may not simply file a new lawsuit in the same court hoping for a second bite at the same apple. This is especially so where, as

9

here, the litigant received opportunities to remedy the defects in question during the earlier lawsuit, but declined to take them. Whether technically analyzed in terms of claim-splitting or res judicata, the end result is the same—Omar Saqr's claims here are barred because they were the subject of *Saqr I*.

With respect to Saqr's claims in the instant action (with one exception discussed below), Defendants frame the issue in this case in terms of claim-splitting rather than conventional res judicata.[2] (Mot. to Dismiss, Doc. 16, #142). A court's power to dismiss duplicative lawsuits follows from its inherent control over the administration of its own docket. *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019). Whereas res judicata typically applies where there is already a final judgment in the first action, the claim-splitting analysis instead applies where the first action is still pending. *See id.* Accordingly, a court exercising its power to dismiss duplicative cases on claim-splitting grounds is allowed to presume finality of the first

---

[2] The term "res judicata" has engendered a fair amount of confusion over the years. Some courts use it only to refer to what is now known as "claim preclusion." Other times, though, courts, including the Supreme Court, have observed that res judicata encompasses the related but distinct doctrines of claim preclusion *and* issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *see also Musleh v. Am. Steamship Co.*, 766 F. App'x 214, 215 (6th Cir. 2019). Understood either way, res judicata "precludes parties from contesting matters that they have had a full and fair opportunity to litigate." *Taylor*, 553 U.S. at 892. Because of the inconsistent manner in which the term "res judicata" is used, though, some courts disfavor its use and instead prefer to specify whether it is claim preclusion or instead issue preclusion that applies in a particular case. *See Goodine v. City of Chattanooga,* No. 1:09-CV-50, 2010 WL 3211682, at *2 n.1 (E.D. Tenn. Aug. 11, 2010); *Dimov v. EMC Mortg. Corp.*, No. 1:11-CV-160, 2012 WL 1071186, at *2, n.4 (E.D. Tenn. Mar. 29, 2012). The Court acknowledges the concern that the ambiguity surrounding res judicata can create. Here, however, the Court considers that use of that term does not create undue confusion given that Saqr's claims in this action are admittedly identical to those in *Saqr I*. On the other hand, definitively classifying whether the preclusive effect of *Saqr I* on the instant lawsuit arises as a result of claim preclusion or issue preclusion (or both) would raise questions whose resolution is unnecessary. Thus, the Court uses the term "res judicata" in the generic sense, but specifies the scope of the resulting preclusive effect on the various separate issues here.

suit, while otherwise applying the requirements for res judicata. *Id*. Putting that all together, dismissal of a duplicative lawsuit on claim-splitting grounds is appropriate where (1) there is a pending earlier lawsuit (in which the court presumes a final judgment has occurred) involving (2) the same parties or their privies, (3) an issue in the second lawsuit that was or should have been litigated in the first suit, and (4) the suits assert the same causes of action. *See Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999) (elements of res judicata).

Here, those requirements were all met at the time Saqr filed his Complaint on January 10, 2020. His claims in *Saqr I* were still pending, as the Court had not yet adopted the Magistrate Judge's Third R&R dismissing them. Because the instant suit is against UC employees in their official capacities only, all parties in this suit are in privity with UC and the UC College of Medicine, the defendants in *Saqr I*. *See Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 481 (6th Cir. 2014) ("Here, CMU stood in privity with its coaches and administrators because Heike sued those individuals in their official capacities in *Heike I*."). The issue of whether Eleventh Amendment immunity barred Saqr's claims was litigated in *Saqr I*. And *Saqr I* and the instant suit involve the same causes of action arising out of Saqr's dismissal from the UC College of Medicine. Thus, the rules against claim-splitting suggest that Saqr's case should have been dismissed, or at least that such dismissal would have been an appropriate exercise of the Court's discretion, at the time that Saqr filed his Complaint (Doc. 1) in the instant action.

11

Without seriously disputing any of this, Saqr argues that the Court may not presume finality of the judgment in *Saqr I* given the precise grounds on which the Magistrate Judge in that action recommended dismissing his claims, namely a state's Eleventh Amendment immunity from suit in federal court. (Resp. in Opp'n to Mot. to Dismiss ("Opp'n"), Doc. 18, #158). Saqr suggests that dismissal for lack of subject matter jurisdiction, of which he says dismissal on Eleventh Amendment immunity grounds is one variety for res judicata purposes, does not operate as a final judgment. (*Id.*). But as regards the claim-splitting analysis, this misses the point. As noted above, a Court exercising its power to avoid duplicative litigation on its docket may *presume* a final judgment on the merits in its determination of whether the plaintiff has improperly split his claims into multiple suits. *Waad*, 762 F. App'x at 260. This presumption is not an empirical prediction about what will in fact happen in the first suit, but rather a counterfactual that allows the court to determine whether it is appropriate to allow the two suits to persist on the court's docket at the same time. The idea is that the first suit normally will be the appropriate vehicle to resolve the plaintiff's claims, making a proliferation of additional simultaneous lawsuits on the court's docket unnecessary and counterproductive. Thus, under the claim-splitting framework, the instant action was not properly filed because it concerned the same causes of action against the same parties or their privies as in *Saqr I*, which was still pending at the time.

So much for the status of Saqr's Complaint (Doc. 1) in the instant matter when measured as of the time Saqr filed that Complaint. If the issue is instead analyzed

12

according to present circumstances, Saqr's claims are also barred, but on more familiar res judicata grounds, rather than claim-splitting grounds. *See Waad*, 762 F. App'x at 260; *Wilkins*, 183 F.3d at 532. Applying the elements of res judicata, the issue of whether Saqr's claims were barred by UC's Eleventh Amendment immunity was litigated and decided in *Saqr I*, which involved the same claims and parties as the instant action. Again, Saqr does not seriously dispute that. Instead, Saqr again argues that the dismissal of his claims in *Saqr I* on Eleventh Amendment immunity grounds was not a final judgment on the merits, and therefore lacks preclusive effect. (Opp'n, Doc. 18, #159). And again, that misses the point. *Saqr I* decided whether the Eleventh Amendment bars Saqr's claims against UC in federal court, and the judgment in *Saqr I* has preclusive effect as to whether the claims at issue there may be pursued in federal court. *See North Ga. Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429, 433 (10th Cir. 1993) ("Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims." (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980))). Thus, even if dismissal based on Eleventh Amendment immunity is best understood as a dismissal for lack of subject-matter jurisdiction for res judicata purposes, that is of no help to Saqr, because even a dismissal for lack of subject-matter jurisdiction has preclusive effect as to the question of jurisdiction itself. Accordingly, *Saqr I* precludes Saqr from relitigating in federal court the question of whether Eleventh Amendment immunity

13

bars Saqr's claims against UC. That is enough to dispose of this case, just as the original determination of the same question was enough to dispose of Saqr's claims in *Saqr I*.

Nevertheless, Saqr suggests that a court should not dismiss a case on claim-splitting or res judicata grounds where a motion to amend the complaint was denied in the earlier case. (Opp'n, Doc. 18, #160–61). But Saqr had his chance to amend his complaint in *Saqr I*. Indeed, after Saqr first moved to amend his complaint in *Saqr I*, the Magistrate Judge explained in her Second R&R in *Saqr I* that the Proposed Amended Complaint in that action was potentially deficient, giving Saqr a deadline to submit another version that would properly plead the *Ex parte Young* exception to Eleventh Amendment immunity. It was then Saqr (and his brother Ahmad) who neither submitted another proposed amended complaint, nor objected to the Magistrate Judge's Second R&R offering this option, nor requested more time to further amend the Complaint in *Saqr I*. Instead, it was not until Saqr's *reply* to UC's response to his Motion to Amend in *Saqr I* that Saqr sought leave to submit a further "Amended Proposed Amended Complaint." *Saqr I*, 2020 WL 5361669, at *4. And it was only then, in her *Third* R&R in *Saqr I*, that the Magistrate Judge recommended denying leave to amend, both on futility grounds and because of undue delay and unfair prejudice to UC.

Even at that point, Saqr was not out of options: he could, and did, object to the Magistrate Judge's Third R&R. As discussed above, the Court has since considered and overruled Saqr's arguments that he should have been be allowed to further

14

amend his *Saqr I* complaint in its September 8, 2020, Opinion and Order in *Saqr I*. *Id.* Accordingly, the Court is satisfied that the issue of whether Saqr should have had further opportunity to amend his complaint was also considered and decided in *Saqr I*. To the extent that the instant suit is nothing more than a transparent attempt to get around the Magistrate Judge's recommended denial of leave to amend Saqr's complaint in *Saqr I*, this lawsuit is a perfect illustration of the rationale for dismissing cases on claim-splitting grounds.

The Court accepts Saqr's representation that he lacks "vexatious or gamesmanship intent." (Opp'n, Doc. 18, #160). But Saqr cites, and the Court finds, no authority for the proposition that such "intent" is an element of claim-splitting. What Saqr *does* concededly desire is "to have his claims decided on the merits." (*Id.* at #162). And therein lies the problem. Saqr fails to recognize that his previous, substantially identical lawsuit *was* his opportunity to have the claims he seeks to reassert here decided on the merits in federal court. That lawsuit failed because Saqr either did not or could not allege facts sufficient to fit his case within the *Ex parte Young* exception to UC's Eleventh Amendment immunity from suit. Saqr laments that, as things now stand, this Court will never reach the merits of the claims at issue here. (*See id.*). But there is good reason for that: Eleventh Amendment immunity, which the Court in *Saqr I* concluded applies here, is indeed a bar to adjudication of the merits of a plaintiff's claims against a state in federal court. Thus, to the extent that the Court considers Saqr's "intent" at all, that intent, while understandable,

15

tends to confirm rather than refute the appropriateness of the dismissal of Saqr's claims in this action.

All of that said, as mentioned above, one of the claims from *Saqr I* reasserted in the instant action is in a different category from the others. As Defendants note, at the time Saqr filed the Complaint in this case, Saqr's ADA retaliation claim in *Saqr I* had already been dismissed pursuant to the Court's adoption of the First R&R there. (Mot., Doc. 16, #146). Thus, claim-splitting is not applicable to the retaliation claim, since that claim was not pending when Saqr filed this action. Instead, the retaliation claim is subject only to res judicata. Otherwise, though, the analysis is the same: the determination in *Saqr I* that the Eleventh Amendment barred Saqr's ADA retaliation claims has preclusive effect as to that same question in this lawsuit, and therefore entitles UC to dismissal of that claim in this suit. Separately, the retaliation claim is also barred because this Court concluded in *Saqr I* that Saqr failed to plead sufficient facts to support his retaliation claim, and thus dismissed the claim on that basis as well. That dismissal is a "judgment on the merits," and thus gives rise to a claim preclusive effect on that additional ground. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" (quoting *Angel v. Bullington*, 330 U.S. 183, 190; *Bell v. Hood*, 327 U.S. 678 (1946))).

Because the dismissal of the ADA retaliation claim in *Saqr I* resulted in a final judgment on the merits on that claim, giving preclusive effect to that determination here likewise requires that this claim be **DISMISSED WITH PREJUDICE**. On the

16

other hand, the Court **DISMISSES WITHOUT PREJUDICE** Saqr's other claims in this action. That is because the dismissal of those claims arises from the preclusive effect of the determination in *Saqr I* that Eleventh Amendment immunity applies. But that immunity would not necessarily prevent Saqr from pursuing the same claims in state court. *See Carmichael v. City of Cleveland,* 571 F. App'x 426, 435 (6th Cir. 2014) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice." (citing *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005))); Fed. R. Civ. P. 41(b) (dismissal for lack of jurisdiction does not operate as adjudication on merits).

Because Saqr's claims in the instant lawsuit are precluded in light of the course of litigation and disposition of the same claims in *Saqr I*, the Court need not, and does not, consider whether they are also barred by the statute of limitations, nor does the Court address whether Saqr's Complaint (Doc. 1) in the instant action would fail to state a claim if considered on its own terms without regard to the effect of *Saqr I*.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** the Motion to Dismiss (Doc. 16) Saqr's Complaint (Doc. 1) and **DISMISSES WITHOUT PREJUDICE** Saqr's claims against all Defendants, except for Saqr's ADA retaliation claim, which the Court **DISMISSES WITH PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

**SO ORDERED.**

December 21, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**